Loans UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CEDRIC L. BILLUPS and DONNA M. BILLUPS, | § § | Case No.  19-45049 |
| Debtors | § | Chapter 13 |

| | | |
|---|---|---|
| CEDRIC L. BILLUPS and DONNA M. BILLUPS, | § § | |
| Plaintiffs, | § § | |
| v. | § | Adversary No.  20-04011 |
| PHH MORTGAGE CORPORATION; RESIDENTIAL FUNDING COMPANY, LLC; STELIS, LLC; PARTNERS FOR PAYMENT RELIEF DE II, LLC; and ARBELAEZ INVESTMENTS, LLC | § § § § § § | |
| Defendants | § | |

**<u>PLAINTIFFS' SECOND AMENDED COMPLAINT TO QUIET TITLE,
FOR MONETARY DAMAGES
AND REQUEST FOR PERMANENT INJUNCTION</u>**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE EDWARD L. MORRIS:

**NOTICE TO ALL DEFENDANTS:
EXHIBITS REFERENCED IN THE COMPLAINT WILL BE
SERVED ON A FLASH DRIVE WITH THE COMPLAINT**

NOW COME, Cedric L. Billups and Donna M. Billups, Plaintiffs herein, complaining of PHH MORTGAGE CORPORATION (successor by merger to Ocwen Loan Servicing, LLC); Residential Funding Company, LLC; Stelis, LLC; Partners for Payment Relief DE II, LLC and Arbelaez Investments, LLC, Defendants. There are multiple causes of action that are the subject of this Complaint. The Plaintiffs respectfully show unto the Court as follows:

**A.**

1.      Plaintiffs are the debtors in the underlying Chapter 13 bankruptcy case filed on December 11, 2019.

**B.**
**PARTIES AND SERVICE**

2.        Plaintiffs, Cedric L. Billups and Donna M. Billups, are residents of Tarrant County who own and formerly occupied the property located at 2723 Excalibur Drive, Grand Prairie, Texas 75052. Plaintiffs may be served through their attorney of record, Alice Bower, 6421 Camp Bowie Blvd. Suite 300, Fort Worth, TX 76116.

3.        Defendant, Partners for Payment Relief DE II, LLC (hereinafter referred to as "PPR"), is a limited liability company formed in Delaware. The Registered Agent for PPR is ATA CORPORATE SERVICES, LLC, 1201 N. Market Street, Suite 2300, Wilmington DE 19801. PPR is not registered with the Texas Secretary of State.  The Executive Officer of PPR is David Van Horn who may be served at the main office for PPR, 920 Cassatt Road, Suite 210, Berwyn, PA 19312. PPR is a buyer of distressed and/or second mortgages. PPR is both a creditor and a debt collector: a creditor because PPR alleged that a debt was owed to it and a debt collector because the debt that they obtained (if they obtained it) was in default at the time that they obtained it. Further PPR is a mortgage company as that term is defined by the truth-in-lending act. PPR is a defendant in the claims for quiet title, wrongful foreclosure, fraud, intentional infliction of emotional distress, monetary damages, exemplary damages, estoppel, laches and attorney fees. A courtesy copy of the Second Amended Complaint will be served on PPR's attorney of record, Thomas M. Misteli.

4.        Defendant Arbelaez Investments, LLC (hereinafter referred to as "ARBELAEZ"), is a Texas Limited Liability Company doing business in Tarrant County, Texas.  This Defendant may be served with process through its registered agent at the following address, or wherever he may be found:  David Arbelaez, 7217 Heritage Oaks Dr, Mansfield, TX 76063. ARBELAEZ does not have managing members: management of the LLC is reserved to the members. The name and address of the governing person is David Arbelaez, Member, 7217 Heritage Oaks Dr, Mansfield, TX 76063. Arbelaez is a defendant in the wrongful foreclosure, suit to quiet title, monetary damages and attorney fees. A courtesy copy of the Second Amended Complaint will be served on Arbelaez's attorney of record, Lance Erickson.

5.      Defendant, PHH Mortgage Corporation is the successor by merger to Ocwen Loan Servicing LLC ("Ocwen"). Ocwen was a limited liability company. Effective June 1, 2019, Ocwen Loan Servicing, LLC merged with and into PHH Mortgage Corporation. PHH Mortgage Corporation is the "surviving corporation." The main office for PHH Mortgage Corporation is 1 Mortgage Way, Mt. Laurel, New Jersey 08054. The summons will be issued to PHH Mortgage Corporation, ATTN Officer or Director, 1 Mortgage Way, Mt. Laurel, NJ 08054. Defendant PHH Mortgage Corporation is a defendant to the claim for quiet title, estoppel, laches, monetary damages and attorney fees.

6.      Defendant Residential Funding Company, LLC ("Residential" or "RFC") is a limited liability company. The main office for Residential Funding Company, LLC is 7501 Wisconsin Avenue, East, Tower Suite 900, Bethesda MD 20814. Service will be on Residential Funding Company, LLC ATTN: Officer or director at the listed address. In addition, Defendant's registered agent for service is Corporation Service Company, 251 Little Falls Dr., Wilmington, DE 19808. Defendant RFC is a defendant in the claims for quiet title, monetary damages and attorney fees.

7.      Defendant Stelis, LLC is listed as an assignee on the assignment from RFC to Stelis, LLC. The address in the assignment to Stelis, LLC, is Stelis, LLC at 2001 Western Ave, Suite 430, Seattle WA 98121. The address in the assignment from Stelis, LLC to PPR is listed as 30 Wall Street, 6th Floor, New York, NY 10005. The New York address for Stelis LLC is a "virtual office."[1] Mail delivered to the New York address was returned. The corporate status of Stelis, LLC in the State of Washington is terminated as of January 3, 2020. The corporate agent was Weinstein & Riley, P.S. whose address is 2001 Western Ave, Ste 400, Seattle WA 98121-3132. The governor of Stelis LLC is OPHRYS, LLC. The registration reflects that Stelis, LLC is a foreign corporation. Further research reveals that Stelis LLC was originally formed in Delaware on July 10, 2013. The registered agent for service in Delaware is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. No corporate officers are listed with the Delaware Secretary of State. On the last report filed with the State of Washington, Alex Brockway, Ophrys, LLC is listed as

---

[1] Alliance Virtual Offices, Capstone Executive Offices, and Your Wall Street Office all offer virtual office space at 30 Wall Street, New York, NY

the authorized representative. Plaintiffs will serve the Delaware agent for service, Corporation Service Company; authorized representative, Alex Brockway; and governor, OPHRYS, LLC. Defendant Stelis LLC is a mortgage company. Stelis is a defendant to the claims to quiet title, for monetary damages and attorney fees.

## C.
## AGENCY AND RESPONDEAT SUPERIOR

8. Wherever it is alleged that a Defendant did anything, or failed to do anything it is meant that such conduct was done by Defendant, Defendant's employees, vice principals, agents, attorneys, predecessors-in-interest, and/or affiliated entities, in the normal or routine scope of their authority, or ratified by Defendant, or done with such apparent authority so as to cause Plaintiff to reasonably rely that such conduct was within the scope of their authority. Plaintiff did rely to Plaintiff's detriment on Defendant's representatives being vested with authority for its conduct. Defendant is vicariously liable for the conduct of its employees, vice principals, agents, attorneys, affiliated entities, and representatives of Defendant's affiliated entities by virtue of *respondeat superior*, apparent authority and estoppel doctrines.

## D.
## JURISDICTION & VENUE

9. This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §1334 and §§ 157. This is a core matter under the provisions of 28 U.S.C. §157(b)(2)(A), (B), (C), (E), (H), (K) and (O).

10. Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial portion of the events giving rise to Plaintiffs' claims occurred in this district and because Plaintiffs' Chapter 13 bankruptcy was filed in this district. Defendants PHH and PPR's wrongful acts occurred in this district. Defendants PHH, PPR and Arbelaez maintain systematic and continuous contacts within Tarrant County, Texas, and the subject matter of this lawsuit arises out of those contacts.

11.     Pursuant to Fed. R. Bankr. P. 7008(a), Plaintiffs state that to the extent that the Court determines that any portion of this complaint is non-core, Plaintiffs consent to the entry of final orders or judgments in this adversary proceeding by the bankruptcy judge if it is determined that the bankruptcy judge absent consent of the parties cannot enter final orders or judgment consistent with Article III of the United States Constitution. Further, to the extent that any court determines that the bankruptcy court does not have the authority to enter a final judgment on any cause of action set forth herein, Plaintiffs request that the Bankruptcy Court issue a report and recommendation for a judgment to the United States District Court for the Northern District of Texas on any such cause of action.

## E.
## RELEVANT FACTS

### *Background*

12.     This suit concerns title to the real estate located at 2723 Excalibur Drive, Grand Prairie, Texas 75052 (hereinafter referred to as the "Property"), which is legally described as follows:

> Lot 27, Block E, of PHASE I, KINGSWOOD FOREST ADDITION, an Addition to the City of Arlington, Tarrant County, Texas, according to the Map thereof recorded in Cabinet A, Slide 4340, of the Plat records of Tarrant County, Texas.

13.     Plaintiffs assert that they are the actual owners of the Property pursuant to a deed filed at D201003421 [EXH 1] of the Real Property Records of Tarrant County, Texas.  The property is a single-family residence. The property was the principal dwelling of the Plaintiffs from December, 2000, until February 24, 2020 when Arbelaez initiated a forcible eviction pursuant to a writ of possession. Defendant ARBELAEZ is shown as the record owner of the Property and claims legal title to the Property under a Foreclosure Sale Deed, dated June 5, 2018, which shows Defendant PPR as the noteholder.  The Foreclosure Sales Deed was filed June 7, 2018, at Instrument No. D18123087 [EXH 2] of the Real Property Records of Tarrant County, Texas (hereinafter referred to as the "Foreclosure Deed"). Plaintiffs assert that the foreclosure was void *ab initio*.

14.     On or about December 22, 2000, Plaintiffs purchased the Property and executed a first lien note to Sebring Capital Corporation in the amount of $132,150, secured by a first lien deed of trust filed at Instrument No. D201003425 [EXH 3] of the Official Public Records of Tarrant County, Texas (hereinafter referred to as the "First Lien").  Plaintiffs also executed a second lien note to Sebring Capital Corporation in the amount of $23,300 secured by a second lien deed of trust filed at Instrument No. D201003427 [EXH 4] of the Official Public Records of Tarrant County, Texas (hereinafter referred to as the "Second Lien").

15.     On or about December 27, 2000, the First Lien and Second Lien were assigned by Sebring Capital Corporation to Bank One National Association, Trustee.  The First Lien and Second Lien were serviced by Homecomings Financial, LLC. The assignment of the second lien was recorded in the Tarrant County Deed Records as D202073028 [EXH 5] on March 15, 2002.

16.     In early 2004, Plaintiffs experienced financial difficulty and became delinquent in their payments on the First Lien and Second Lien.  Plaintiffs filed bankruptcy case number 04-46367-rfn13 in the Northern District of Texas; Fort Worth Division on July 1, 2004 to become current on the First and Second Liens.[2] Homecomings Financial, through its attorneys of record, Baxter & Schwartz, P.C., filed Proof of Claim 3-1 for the first lien as "HOMECOMINGS FINANCIAL, as servicing agent for BANK ONE, NATIONAL ASSOCIATION, AS TRUSTEE).[3] Homecomings Financial, through its attorney of record, Baxter & Schwartz, P.C., filed Proof of Claim 4-1 for the second lien as "HOMECOMINGS FINANCIAL, as servicing agent for BANK ONE, NATIONAL ASSOCIATION, AS TRUSTEE."[4]

17.     During the pendency of the bankruptcy, Plaintiffs defaulted on the post-petition payments to the mortgage company. As a result of the default, Homecomings Financial Network, as the servicing agent for Bank One, National Association (who held both the first and second liens "in trust" at the time) filed a Motion for Relief from Stay as to the property.[5] The Plaintiffs filed an opposed response to the

---

[2] 04-46367-rfn-13 document 2
[3] 04-46367-rfn-13 claim 3-1
[4] 04-46367-rfn-13 claim 4-1
[5] 04-46367-rfn-13 document 16

Motion for Relief from Stay.[6] The parties entered into an Agreed Order Modifying the Automatic Stay[7] which provided that the Plaintiffs would resume making current mortgage payments and add the post-petition mortgage arrearage to the Chapter 13 plan.

18.     On September 23, 2008, the attorneys for Homecomings Financial LLC sent a Notice of Default to the plaintiffs.[8]

19.     On October 10, 2008, Homecomings Financial Network as servicing agent for Bank One, National Association, filed a Notice of Termination of the Automatic Stay.[9]

20.     On December 3, 2008, the trustee filed a Chapter 13 plan[10] which provided for direct payments to be paid to Homecomings Financial as a result of the termination of the stay.

21.     On August 18, 2009, the Plaintiffs completed their Chapter 13 plan and received a discharge.

22.     In 2009, Plaintiffs requested a loan modification of the First Lien **and** Second Lien through Homecomings Financial, LLC, loss mitigation department with the assistance of their attorney, Letitia Martinez Evans. It is unknown to plaintiffs who actually held the notes and deed of trust on the first and second liens at the time of the loan modification. No notice of the assignment or transfer of the first or second lien was submitted to the Plaintiffs. Plaintiffs believed that Homecomings was acting as the servicer for Bank One.

23.     Plaintiffs obtained a loan modification through Homecomings Financial, LLC. Plaintiffs believed, based on the statements of Plaintiffs' attorney and representatives in Homecomings Financial's loss mitigation department, that the second note had been extinguished and charged off through the loan modification process. At the time that the loan modification was approved, Plaintiff's received a Notice of Rescission of the Acceleration of Second Lien which is recorded in the Tarrant County Deed Records as

---

[6] 04-46367-rfn-13 document 17
[7] 04-46367-rfn-13 document 20
[8] 04-46367-rfn-13 document 49-1
[9] 04-46367-rfn-13 document 49
[10] 04-46367-rfn-13 document 50

D209127488. Plaintiffs stopped receiving statements on the second lien. Under color of law, Plaintiffs no longer made payments on the Second Lien. **Plaintiffs received no documentation, no notices, no mortgage statements, and no communication regarding the Second Lien from 2009 until 2017.** If there was a valid second lien against the property that survived the loan modification, the failure to send mortgage statements was an ongoing violation of both 2 CFR Part 1026 (Truth in Lending Act) and 15 U.S.C. sec.1692g (Consumer Credit Protection – Debt Collection Practices).

24.     On or about June 1, 2009, the servicing of the first lien[11] was transferred to GMAC. Plaintiffs have continued making payments on the first lien and, until the time that they were evicted from their home, they were current on all payments on the first lien. Plaintiffs' payment history regarding the First Lien undermines any notion that they were unable to afford to make payments related to any second lien on the Property. In other words, if there was a payment for a second lien on the Property, Plaintiff would have made that payment along with payment for the First Lien.

25.     In September 2013, servicing of the first lien was transferred to Ocwen Loan Servicing. Plaintiffs were timely informed of the transfer of servicing of the modified loan to Ocwen Loan Servicing.

26.     Plaintiffs received no notice regarding transfer of the second lien to Ocwen, or to any other creditor or servicing agent, at any time prior to a demand letter from William Riley Nix in April, 2017. Effective June 1, 2019, Ocwen Loan Servicing, LLC was merged into PHH Mortgage Corporation, one of the defendants herein.

27.     Plaintiffs enjoyed peaceful possession of their home until they first heard of a claim on the Second Lien eight (8) years following the loan modification when they received a letter from the Nix Law Firm in April 2017. In the letter, Nix threatened an acceleration of the second note and the foreclosure of the Second Lien. The April 2017 letter was the first demand for payment regarding the second lien from the time of the loan modification. The plaintiffs received no notices of assignments of the second lien from the time of the modification in 2009. The plaintiffs received no monthly statements regarding amounts due

---

[11] Plaintiffs believed that the first lien was the only loan against their property as a result of the loan modification.

on the second lien. From the time of the modification until the Nix April 2017 letter, there had been no communication regarding the second lien.

### *Inconsistencies in the Ocwen Assignment*

28.     On July 28, 2014, Defendant PPR[12] caused to be filed a Corporate Assignment of Deed of Trust, dated October 8, 2013, electronically recorded under Instrument No. D214160956 [EXH 6] of the Official Public Records of Tarrant County, Texas.  The assignment was purportedly executed by "Ocwen Loan Servicing, LLC as attorney-in-fact for The Bank of New York Mellon Trust Company, National Association, as Trustee, F/K/A The Bank of New York Trust Company, N.A. as Trustee, as Successor to JPMORGAN CHASE BANK, N.A., SBM Bank One National Association as Trustee* to Residential Funding Company, LLC *RASC 2001-KS1" (hereinafter referred to as the "First Fraudulent Assignment"). The First Fraudulent Assignment was purportedly executed by Mary A. Miller as "Authorized Signer" in the State of Iowa.  No proof of capacity by Mary A. Miller to sign for Ocwen Loan Servicing, LLC was provided.  There is no explanation as to why the First Fraudulent Assignment was purportedly executed on October 8, 2013, but not recorded until July 28, 2014.  The document was notarized by Teresa Olson, Iowa Commission No. 779238.

29.     The assignment on October 8, 2013 from Ocwen to Residential Funding Company LLC *RASC 2001-KS1 is problematic: it is inconsistent with the publicly available information. According to the face of the assignment, Ocwen was acting as "attorney in fact for The Bank of New York Mellon Trust Company National Association, as Trustee, F/K/A The Bank of New York Trust Company N.A. as Trustee, as successor to JP Morgan Chase Bank N.A. as Trustee, SBM BANK ONE NATIONAL ASSOCIATION AS TRUSTEE* below the recitation appears *RASC 2001—KS1. RASC 2001—KS1 is the designation of a mortgage backed security ("MBS").

---

[12] The assignment states, "When Recorded Return To: Prepared by and Return to: Partners for Payment Relief, LLC, 3748 West Chester Pike, Suite 103, Newtown Square, PA 19073"

30. Publicly available information on the RASC 2001-KS1 asset backed securities can be found in Moody's Investors Service ("Moody's"). On March 30, 2001, Moody's rated RFC's RASC 2001-KS1 Subprime Securitization as Aaa [EXH 7]. Moody's analyst states "Residential Funding Corporation (RFC) is the master servicer of the loans. HomeComings Financial Network, Inc., a wholly owned subsidiary of RFC, will be the primary servicer for about 86.7% of the FRM loan group and for approximately 85.4% of the ARM loan group. HomeComings is considered to be a highly capable servicer." It is internally inconsistent why any entity would be transferring the second lien into an asset backed security more than 12 years after the Asset Backed Security was formed.

31. In addition, Residential Funding Corp filed form ABS-15G (Asset-Backed Securitizer Report pursuant to Section 15G of the Securities Exchange Act of 1934) with the Securities and Exchange Commission dated December 31, 2012 and filed on January 22, 2013 [EXH 8] which identifies the RASC securities. Residential Funding Company, LLC, not Ocwen, owned the mortgages which were contained in the MBS as of January 22, 2013.

32. From the foregoing, it appears that RFC held the second lien from 2001 to 2012: Moody's lists RFC in the analysis and RFC filed an ABS-15G on December 31, 2012 both of which reference the MBS which appear to have held Plaintiffs' second lien.

33. Residential Funding Company, LLC filed for bankruptcy in the Southern District of New York in Case Number 1:12-bk-12019 on May 14, 2012. The lead case was 1:12-bk-12020 Residential Capital, LLC (ResCap). The MBS of which this mortgage was a part was the subject of a settlement agreement [EXH 9][13] in the lead case. The settlement agreement is proof that

---

[13] EXH 9, Schedule A

Residential Funding owned the mortgage before filing for bankruptcy on May 14, 2012. As part of the settlement agreement, Financial Guaranty Insurance Company paid the certificate holders.

34.     According to the Form S-4 amendment number 1 [EXH 10] filed by Ocwen Financial Corporation with the SEC on November 12, 2015, Ocwen purchased assets from Residential Funding[14] as part of the bankruptcy. There was no assignment from Residential Funding to Ocwen. Instead, the assignments recited in the demand and notice of substitute trustee sale are from Ocwen to Residential Funding. The order of the assignment is inconsistent with the public records: RFC owned/serviced the lien PRIOR to the time that Ocwen transferred it to Residential Funding. This inconsistency in timing is one of the factors which leads to the belief that the assignment from Ocwen to RFC was either a break in the chain of title or a forgery.

35.     It is unclear from the recitals in the assignment, when, if ever, Ocwen acquired the Deed of Trust. Ocwen's transfer of the deed of trust to Residential Funding is in the capacity of "attorney in fact" for The Bank of New York Mellon Trust Company, not as the owner of the deed of trust or as the servicer of the mortgage.

36.     The assignments of the second lien are problematic from the beginning. It is readily ascertainable from public records that JP Morgan Chase Bank became a successor by merger to Bank One. The recitation of assignors is that the Bank of New York Mellon Trust Company National Association, as trustee, fka The Bank of New York Trust Company, N.A. (collectively "BNY") as trustee *as successor* [emphasis added] to JPMORGAN CHASE BANK N.A.

---

[14] Page 9 "2.6 Asset Purchase Agreement between Ocwen Loan Servicing, LLC and Residential Capital, LLC, Residential Funding Company, LLC … dated as of November 2, 2012.

("Chase"), cannot be true: BNY is not a successor to Chase. Both Chase[15] and BNY[16] currently exist. In order for there to not be a break in the chain of title, Chase would have had to assign the deed of trust to BNY. There is no assignment from Chase to BNY. There is no assignment to Ocwen. Because there is no assignment from any lienholder to Ocwen in the chain of assignments, it cannot be determined when, if ever, Ocwen acquired the assignment of the second lien prior to the assignment to RFC.[17]

37.     As can be seen on the First Fraudulent Assignment, the assignment was prepared by Partners for Payment Relief, LLC. Partners for Payment Relief is not the beneficiary of this assignment. It is problematic that an entity that is not the assignor, not the assignee and has no relationship as an agent for either party would be preparing the corporate assignment. The designation that the assignment was prepared by Partners for Payment Relief is an indicia of fraud or forgery.

### Inconsistencies in the Assignment from RFC to Stelis LLC

38.     On July 28, 2014, Defendant PPR caused to be filed a Corporate Assignment of Deed of Trust, dated October 8, 2013, electronically recorded under Instrument No. D214160957, [EXH 13] Official Public Records of Tarrant County, Texas.   The assignment was purportedly executed by Residential Funding Company, LLC to Stelis, LLC (hereinafter referred to as the "Second Fraudulent Assignment"). The address listed for Stelis in the assignment to it was the Seattle Washington address.

---

[15] Exhibit 11 FDIC bank find results JPMorgan Chase
[16] Exhibit 12 FDIC bank find results The Bank of New York
[17] Prior to the filing of this Second Amended Complaint, defendant PHH, the successor by merger to Ocwen, produced in response to a request for production, records which purport to be the entirety of the records held by Ocwen regarding the Billups property. Noticeably absent from the records are an assignment of the second lien to Ocwen and a copy of the assignment from Ocwen to RFC or any other entity. Plaintiffs have not yet received a business records affidavit regarding the documents produced.

39.     The Second Fraudulent Assignment was (once again) purportedly executed by Mary A. Miller as an "Authorized Officer" in the State of Iowa.  No proof of capacity by Mary A. Miller to sign for Residential Funding Company, LLC was provided.  There is no explanation for why the Second Fraudulent Assignment was purportedly executed on October 8, 2013, but not recorded until July 28, 2014.  The First Fraudulent Assignment and the Second Fraudulent Assignment are nearly identical in form, including handwritten corrections, signatures of Mary A Miller and notary by Teresa Olson.

40.     Further as can be seen on the Second Fraudulent Assignment, the assignment was prepared by Partners for Payment Relief, LLC. Partners for Payment Relief is not the beneficiary of this assignment. It is problematic that an entity that is not the assignor, not the assignee, and has no relationship as an agent for either party would be preparing the corporate assignment. The designation that the assignment was prepared by Partners for Payment Relief is an indicia of fraud or forgery.

### *Inconsistencies in the Assignment from Stelis LLC to PPR*

41.     On July 28, 2014, according to the face of the assignment from Stelis, LLC to PPR, an apparently un-related party, Dreambuilder Investments, LLC, requested the recording of Corporate Assignment of Deed of Trust, dated April 9, 2014, electronically under Instrument No. D214160958 [EXH 14] Official Public Records of Tarrant County, Texas.  The assignment was purportedly executed by Stelis, LLC to Defendant PPR (hereinafter referred to as the "Third Fraudulent Assignment").  The address listed in the assignment from Stelis to PPR is a virtual office address at 30 Wall Street, New York.

42.     The Third Fraudulent Assignment was purportedly executed by Steve Fullum as an "Assistant Vice President" of Stelis, LLC. The assignment was signed in the State of Missouri.

43.     The Third Fraudulent Assignment states "Recording Requested by DREAMBUILDER INVESTMENTS, LLC."

44.    On the assignment, the assignor is stated as "Stelis, LLC at 30 Wall Street, 6th Floor, New York, NY 10005." The address of 30 Wall Street, 6th Floor, New York, NY 10005 is the address of Dreambuilder Investments LLC.[18] From the facts that can be ascertained from the face of the assignment and the cause of action previously filed by PPR against Dreambuilder Invs. LLC, it appears that this assignment is a fraud or a forgery.

45.    Stelis, LLC is a legal entity formed in Delaware and listed as a "foreign corporation" in the State of Washington.[19] There is no record of a formation of Stelis, LLC in New York nor is there a listing on the corporate information for an address in New York for any of the three Stelis, LLCs. Because there is no Stelis, LLC at 30 Wall Street, 6th Floor, New York, New York and the other reasons set forth herein, the assignment appears to be a fraud or a forgery.

46.    There is no explanation for why two (2) alleged assignments of the Second Lien deed of trust the recording of which were requested by Defendant PPR and one (1) alleged assignment the recording of which was requested by Dreambuilder Investments, LLC , the assignments requested by Partners for Payment Relief DE II, LLC were executed on the same date, October 8, 2013l The third assignment, was dated April 9, 20014. All three documents were recorded on July 28, 2014. The First Fraudulent Assignment, Second Fraudulent Assignment and the Third Fraudulent Assignment have identical handwritten statements: "and also see attached Exhibit A".

### PPR's Actions After Receipt of Assignment

47.    On information and belief, Defendant PPR, by searching public records, located the Second Lien that appeared to be unresolved and decided to prepare documents to file which would purport to transfer ownership of the Deed of Trust to itself.   Defendant PPR, in an attempt to obfuscate its fraudulent actions, initiated a series of assignments culminating in the assignment from Stelis LLC to itself.

---

[18] Partners for Payment Relief, LLC v. Dreambuilder Invs., LLC, No. 12-cv-1414 (RJS), 2016 U.S. Dist. LEXIS 104238 (S.D.N.Y. Aug. 4, 2016).
[19] Exhibit 17

48.     On or about July 22, 2014, Defendant PPR hired Riley Nix ("Nix") of the Nix Law Firm[20] to issue a default letter to the Plaintiffs. Mr. Nix conducted due diligence in regard to the requested demand and notified PPR of missing assignments. A true and correct copy of the PPR email dated July 22, 2014 is part of the email string dated July 31, 2014 [EXH 18] which brings to PPR's attention the missing assignments. At the time that Nix was hired, PPR had not yet received the recorded assignments.[21] In fact, the recorded assignments were not recorded at the time that PPR originally hired Nix.

49.     The July 31, 2014 Nix email to PPR states the following: "The Note shows that Sebring (the original note holder) assigned to Residential and Residential assigned to Bank One, N.A." Nix was aware of the discrepancy between the assignments of the note and the assignments of the deed of trust.

50.     The "missing" assignments were never received. It appears that Nix made no further inquiry into the discrepancy between the assignments of the Note and the assignments of the Deed of Trust. The issue of the assignment from Sebring to Residential rather than to Bank One was never addressed.

### PPR'S Failure to Notify of Transfer of Lien

51.     For a period of 36 months after receiving the assignment, PPR did not advise the plaintiffs of the assignment.

52.     On April 12, 2017, approximately 36 months after the second lien was purportedly assigned to PPR, Nix, acting on behalf of PPR sent a demand for payment [EXH 19] to the plaintiffs regarding the second lien. The demand for payment sent by Nix was the first communication of any type that the plaintiffs received from the date of the loan modification in 2009. From the date of the modification until the date of the demand for payment, Plaintiffs received no monthly statement. In addition, from the date of the purported assignment on April 9, 2014 to the date of the demand for payment on April 12, 2017, PPR failed to send notice of the assignment to the Billups and failed to send monthly statements.

---

[20] July 22, 2014 12:07 p.m. Pati Cruz emailed "Riley, Could you please open file and send the demand letter-Billups? Please send an electronic copy for my records. Entity: Partners for payment relief [sic] DE II, LLC (Assignment in the process of being recorded) …"
[21] July 22, 2014 3:38 p.m. "Pati, Thanks. Do you have a copy of the recorded Assignment from Sebring to PPR? If so, would you forward to us? Thanks, --- Joyce."

*Billups Dispute the Validity of the Debt*

53.     On May 1, 2017, Plaintiffs disputed the demand for payment and mailed the dispute to Nix. Nix did not respond to the Billups dispute. The response came from FCI. Thereafter, Plaintiffs notified FCI Lender Services, Inc. that the second lien had been modified and had been included in the loan modification on the first lien [EXH 20]. Plaintiffs marked the outside of the envelope as "QWR Dispute." Plaintiffs included two pages of the "Fixed Rate Loan Modification Agreement ("Modification")."[22] Paragraph 1 of the Modification states:

> 1. Borrower acknowledges that as of the Effective Date, the amount payable under the Note and secured by the Security Instrument (the "Principal Balance") is One Hundred Forty Two Thousand Four Hundred Seventy Eight Dollars and Thirty Six Cents ($142,478.36). Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance consisting of the amounts(s) loaned to Borrower by Lender and any accrued buy unpaid interest capitalized to date.

Paragraph 5 of the Modification states:

> 5. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

54.     Based on the leading sentence of paragraph 5, the representations of their counsel and the representations of the Homecomings Financial LLC's representative, the Billups believed that the modification included the second lien which was "written off" as part of the modification.

55.     In conformity with the Billups' belief, no monthly statements were sent by the second lienholder following the modification of the loan on April 23, 2009 until the demand for payment dated April 12, 2017. The lack of monthly statements on the second lien reinforced the Plaintiffs' belief that the second lien has been forgiven as part of the loan modification process.

---

[22] It cannot be determined whether the two pages is the complete agreement or only a portion thereof.

56.     Thereafter, Nix acknowledged receipt of the dispute of the validity of the debt. Nix replied to the plaintiffs' dispute that the loan modification which was sent to him appeared to be incomplete and did not reference any inclusion of the second lien in the modification. On October 9, 2017, PPR through Robert Paulus, Director of Borrower Management for PPR, appointed William Riley Nix, David Stockman, Donna Stockman et al as Substitute Trustee. At that point, Nix advised the plaintiffs that he was continuing with the foreclosure sale and set the foreclosure sale for November 7, 2017. The appointment of substitute trustee was filed of record on October 17, 2017. An unofficial copy of the Appointment of Substitute Trustee is attached hereto as Exhibit 21.

### Billups File State Court Action to Stop Foreclosure

57.     On November 3, 2017, Plaintiffs filed a Petition for Temporary Restraining Order in Cause Number 153-296093-17 [EXH 22].

58.     On November 6, 2017, the presiding judge issued the Temporary Restraining Order and set the bond at $1,500. Plaintiffs promptly paid the bond. A true and correct copy of the docket report is attached hereto as EXH 23. As a result of the granting of the Temporary Restraining Order, the November 3, 2017 foreclosure did not occur.

59.     Thereafter, defendant PPR filed an unopposed continuance on November 15, 2017. On January 19, 2018, Plaintiffs filed a Motion for Permanent Injunction. On March 19, 2018, PPR filed its Original Answer. On April 3, 2018, PPR filed special exceptions to Plaintiffs' Petition and Motion for Permanent Injunction. On May 4, 2018, Plaintiffs responded to PPR's special exceptions.

60.     On May 24, 2018, Plaintiffs filed a Second Petition for TRO [EXH 24].

61.     On May 24, 2018, Honorable District Judge Susan McCoy granted an ex part temporary restraining order which restrained the foreclosure sale [EXH 25] stating,

"Therefore, by this order, the court does the following:

a.  Restrains Substitute Trustee William Riley Nix or any Substitute Trustee agent from exercising their intent to sale plaintiffs' home until such time as this court has a hearing on the matter."

Among the findings of Judge McCoy were the following:

a. Harm is imminent to plaintiff and if the Court does not issue the Temporary Restraining Order, plaintiffs will be irreparably injured because plaintiff's home will be appropriated and their right to quiet enjoyment of these premises will be forever denied and their livelihood will forever be impaired.

b. An ex parte order is necessary without notice because there is insufficient time to give notice to defendants, hold a hearing, and issue a restraining order before further harm occurs.

c. Defendants attorney was contacted prior to the filing of this Motion and chose to ***agree to delaying the threatened foreclosure action in spite of the offered proof of possible improprieties perpetrated by defendants*** [emphasis added].

62.     The Court ORDERED that substitute trustee William Riley Nix or any Substitute Trustee agent is restrained from exercising their intent to sale plaintiffs' home until such time as this court has a hearing on this matter.

63.     One of the substitute trustees, William Riley Nix, sent an email to PPR advising that the foreclosure sale would have to be postponed as a result of the Second Petition for Temporary Restraining Order. The Nix email states, "Attached for your file is a copy of Plaintiff's Second Petition for TRO and Order Setting Hearing for Permanent Injunction." [EXH 28a].

64.     After the filing of the Plaintiffs' Application for Second Temporary Restraining Order, on May 25, 2018, Defendant PPR filed a First Amended Answer [EXH 28b]. The answer references the application for Temporary Restraining Order.

65.     A few days after the filing of the First Amended Answer, the defendant PPR filed a response to Plaintiffs' Second Application for Temporary Restraining Order [EXH 28c].

### *With Actual Knowledge of the Temporary Restraining Order, PPR Forecloses*

66.     Defendant PPR with actual knowledge[23] of the Temporary Restraining Order [EXH 28a, EXH 28b, and EXH 28c] and in violation of the restraining order issued on May 24, 2018, conducted the foreclosure sale on June 5, 2018.

67.     Despite having actual knowledge of the Temporary Restraining Order, defendant PPR proceeded to violate the Temporary Restraining Order and sold the property at a foreclosure sale which was specifically prohibited by the Temporary Restraining Order. The plaintiffs contend that the foreclosure sale was void *ab initio* as PPR lacked the right to sell the property at foreclosure. The foreclosure was wrongful in that the sale occurred in violation of the temporary restraining order.

68.     Defendant ARBELAEZ purchased the Property for the sum of $49,000.00.  The purchase is subject to the first lien in the approximate amount of $95,000.

69.     The fair market value of the property at the time of the foreclosure sale was approximately $285,000. The first lien against the property at the time of foreclosure was approximately $95,000.00. The purchase price was approximately 18% of the fair market value of the property. Considering the first lien

---

[23] Tex. R. Civ. P. 683 "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint of other document, the act or acts sought to be restrained; and is finding only upon the parties to the action, their officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with them who receive ***actual notice*** [emphasis added] of the order by personal service or otherwise. Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought. The appeal of a temporary injunction shall constitute no cause for delay of the trial."

against the property, the purchase price was approximately 50% of the fair market value. The purchase price was grossly inadequate.

## F. FIRST CAUSE OF ACTION
## PETITION TO REMOVE CLOUDS AND QUIET TITLE

70.     In support of their first cause of action to quiet title, plaintiffs reassert the facts set forth in paragraphs 12 through 69. This cause of action is brough pursuant to 28 U.S.C. §157 and Ch. 37 of the Texas Civil Practice & Remedies Code (the "Uniform Declaratory Judgments Act"),

71.     The defendants to the first cause of action, petition to remove clouds and quiet title are:

PHH Mortgage Corporation as the successor to Ocwen Loan Servicing Company, LLC (PHH);

Residential Funding Company, LLC ("RFC" or "Residential");

Stelis, LLC

Partners for Payment Relief DE II, LLC (PPR); and

Arbelaez Investments, LLC (Arbelaez);

To prevail in a suit to quiet title, Plaintiffs must prove: (1) Plaintiffs have an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and the claim, though facially valid, is invalid or unenforceable.[24]

72.     The plaintiffs are the owners in fee simple of the property located at 2726 Excalibur Drive, Grand Prairie, Texas pursuant to the Special Warranty Deed with Vendor's Lien dated December 22, 2000 and filed of record as document D201003421 on January 4, 2001, in the deed records of Tarrant County, Texas. . The property is more specifically described as:

Lot 27, Block E of Phase I, Kingswood Forest Addition, an Addition to the City of Grand Prairie, Tarrant County, Texas, according to the Map thereof recorded in Cabinet A, Slide 4340, of the Plat Records of Tarrant County, Texas.

---

[24] Vernon v. Perrien, 390 S.W.3d 47,61 (Tex.App.-El Paso 2012, pet. denied)

A true and correct of the deed is attached to this Second Amended Complaint as Exhibit 1 and incorporated herein by reference.

73.     The plaintiffs petition the court for a declaration of the invalidity of certain documents and claims relating to the property.

74.     On or about October 8, 2013, Ocwen, (now known as PHH), or a person or entity impersonating Ocwen, purportedly assigned the second lien to Residential Funding Company, LLC. The assignment of the second lien is recorded in the deed records of Tarrant County, Texas as Document D214160956, dated October 8, 2013 and filed of record on July 28, 2014, from Ocwen as agent for Bank of New York Mellon to Residential Funding Company LLC. The relevant assignment is attached to this Second Amended Complaint as Exhibit 6.

75.     Based upon the representation of defendant PHH that the full and complete records of Ocwen were produced by PHH in response to requests for discovery, plaintiffs assert that Ocwen did not have an assignment of the second lien, did not have a power of attorney to empower it to assign the second lien, and did not execute the assignment that is found at Exhibit 6. The purported assignment from Ocwen to Residential Funding Company, LLC is not found in the records that were produced to plaintiff. Based upon the missing documents, the plaintiffs assert that the assignment recorded as Document D214160956, dated October 8, 2013 and filed of record on July 28, 2014, from Ocwen as agent for Bank of New York Mellon to Residential Funding Company LLC is a fraud or a forgery.

76.     The assignment under which the defendant PHH (fka Ocwen) asserted an interest that interfered with the plaintiffs' title, although appearing valid on its face, is in fact invalid and of no force or effect. The plaintiffs will show that the person who executed the document had no title or interest in the property described and had no authority, actual or apparent, to encumber the plaintiffs' property. The assignment acts as a cloud on the plaintiffs' title to their property.

77.     The plaintiffs petition the court for a declaration of the invalidity of the assignment of the second lien recorded in the deed records of Tarrant County, Texas as Document D214160956, dated

October 8, 2013 and filed of record on July 28, 2014, from Ocwen (now PHH) as agent for Bank of New York Mellon to Residential Funding Company LLC.

78.     On or about October 8, 2013, Residential Funding Company LLC, ("RFC") or a person or entity impersonating Residential Funding Company LLC, assigned the second lien to Stelis, LLC. This assignment acts as a cloud on the plaintiffs' property. The assignment under which the defendant RFC asserted an interest that interfered with the plaintiffs' title, although appearing valid on its face, is in fact invalid and of no force or effect. The plaintiffs will show that the person who executed the document had no title or interest in the property described and had no authority, actual or apparent, to encumber the plaintiffs' property. The assignment acts as a cloud on the plaintiffs' title to their property.

79.     The plaintiffs petition the court for a declaration of the invalidity of the assignment of the second lien recorded in the deed records of Tarrant County, Texas as Document D214160957, dated October 8, 2013 and filed of record on July 28, 2014, from Residential Funding Company LLC to Stelis LLC, which is attached hereto as Exhibit 13.

80.     On or about April 9, 2014, Stelis, LLC, or a person or entity impersonating Stelis, LLC assigned the second lien to Partners for Payment Relief DE II, LLC. The plaintiffs will show that the person who executed the assignment on behalf of Stelis LLC had no title or interest in the property described and had no authority, actual or apparent, to encumber the plaintiffs' property. The assignment acts as a cloud on the plaintiffs' title to their property.

81.     The plaintiffs petition the court for a declaration of the invalidity of the assignment of the second lien recorded in the deed records of Tarrant County, Texas as Document D214160958, dated April 9, 2014 and filed of record on July 28, 2014 from Stelis, LLC to Partners for Payment Relief DE II, LLC, which is attached hereto as Exhibit 14.

82.     On or about June 4, 2018 defendant Partners for Payment Relief DE II, LLC ("PPR") conducted a foreclosure sale of the plaintiffs' property. PPR did not have a valid interest in the property at the time of the foreclosure sale: the assignment to PPR was invalid and without force or effect. Accordingly, the foreclosure deed should be found to be void and of no force or effect.

83.     The plaintiffs petition the court for a declaration of the invalidity of the foreclosure deed from Partners for Payment Relief DE II, LLC to Arbelaez Investments, LLC which is attached hereto as Exhibit 2. The Foreclosure Sale Deed is document D218123087 in the deed records of Tarrant County. The foreclosure deed is dated June 5, 2018 and is filed of record on June 7, 2018.

84.     Defendant Partners for Payment Relief DE II, LLC should be ordered to pay attorney fees to counsel for the plaintiffs pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code.

85.     Pursuant to 28 U.S.C. §157 and Ch. 37 of the Texas Civil Practice & Remedies Code (the "Uniform Declaratory Judgments Act"), Plaintiffs request that this Court to declare:

a.     that the assignments as set forth herein are null and void and of no force or effect.

b.     that the alleged foreclosure was void ab inititio and is of no force or effect;

d.     that Defendant Arbelaez's alleged interest in the Property was void *ab initio*;

f.     that the foreclosure sale conducted on June 5, 2018 be set aside;

g.     that the foreclosure sale conducted on June 5, 2018 be declared void;

h.     that the Foreclosure Deed conveyed to Defendant ARBELAEZ was (is) void.

i.     order the defendants to pay reasonable and necessary costs and attorney fees as are equitable and just.

## G. SECOND CAUSE OF ACTION
## WRONGFUL FORECLOSURE -FORGED OR FRAUDULENT CONVEYANCE

86.     Plaintiffs reassert the facts set forth in paragraphs 1 – 85 and incorporate the facts herein.

87.     The defendants to the cause of action for wrongful foreclosure are Partners for Payment Relief DE II, LLC (PPR) as the perpetrator of the wrongful foreclosure and Arbelaez Investments, LLC ("Arbelaez") as the beneficiary of the wrongful foreclosure.

88.     The series of assignments through which PPR claimed its right to foreclose begin with a forgery: PHH as successor by merger to Ocwen denies that it assigned the Assignment to RFC. In support

of its denial, PHH submitted documents which purport to be the full and complete records of Ocwen regarding the Billups property. Absent from the documents is an assignment from any previous lienholder to Ocwen and an assignment from Ocwen to RFC. If Ocwen did not assign the second lien note, the purported assignment must be a forgery. A forged deed or deed of trust, is void ab initio, and passes no title.[25] The Bank cannot foreclose under a void deed of trust.[26]

89.     In this case, the assignment from Ocwen to Residential Funding is a fraud or forgery and passes no title. Because PPR's rights originate with the Ocwen assignment, the intervening assignments do not resuscitate the validity of the assignment from which PPR asserts its right to foreclose.

90.     Because Arbelaez's claim to title to the property emanates from a forgery, it cannot be an innocent purchaser when there is a forgery in the chain of title.[27]

## H. THIRD CAUSE OF ACTION
## WRONGFUL FORECLOSURE – NO AUTHORITY TO ACT

91.     "A plaintiff asserting a wrongful foreclosure must show: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate sales price; and (3) a causal connection between the defect and the grossly inadequate selling price."[28]

92.     Here, a defect in the foreclosure, the fact that the foreclosure was conducted in violation of the temporary restraining order, is a proximate cause of the wholly inadequate sales price.[29] A defect in the foreclosure sale proceedings is generally established if the actions of the lender or noteholder caused

---

[25] Texas Osage Co-operative Royalty Pool, Inc. v Cruze, 191, S.W.2d 47. 54 (Tex. Civ. App. –Austin, 1945, no writ); Erwin v. Curtis 5 S.W.2d 547, 548 (Tex. Civ App. –Eastland 1928m writ ref'd); Commonwealth Land Title Co. v. Nelson, 889 S.W.2d 312, 318 (Tex.App._Houston [14th Dist.] 1994, writ denied); Dyson Descendant Corp. v. Sonat, 861 S.W.2d 942, 947 (Tex. App. –Houston [1st Dist.] 1993, no writ); Gaynier v. Ginsberg, 715 S.W.2d 749, 757 (Tex. App. –Dallas 1986m writ ref'd n.r.e.); Turner v. Germany, 94 S.W.2d 1177, 1179 (Tex. Civ. App. –Texarkana 1936), rev'd on other grounds 132 Tex. 491, 123 S.W.2d 874 (Tex. 1939).
[26] 1st Coppell Bank v. Smith, 742 S.W.2d 454 (Tex. App.—Dallas, 1987)
[27] Dyson, supra, 947; Bellaire Kirkpatrick Joint Venture v. Loots, 826 S.W.2d 205, 210.
[28] Hurd v. BAC Home Loans Servicing, L.P., 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012).
[29] "Men are reluctant to pay a fair price for what will be litigated." Pearson v. Flanagan, 52 Tex. 266, (Tex. Sup. Ct. 1879); Sauceda v. GMAC Mortg. Corp., 268 S.W.3D 135,139 (Tex.App. –Corpus Christi 2008, no pet).

the property to be sold for a grossly inadequate price.[30] Here, the temporary restraining order had been issued before the foreclosure sale occurred. Defendant PPR had been actively participating in the litigation in which the temporary restraining order was issued. The existence of a valid temporary restraining order may have been an impediment to other potential bidders to bid on a property that was being sold in violation of the temporary restraining order. Other potential bidders may have declined to bid to avoid being caught up in the very litigation that exists in this case.[31]

93.     Defendant PPR, knowingly, willfully and defiantly, conducted the foreclosure sale in violation of a Temporary Restraining Order issued by the Honorable Susan McCoy. PPR acted when it was legally forbidden to do so. PPR was acting without authority in conducting the foreclosure sale.

94.     The sales price was grossly inadequate. The sales price was $49.000,00 [EXH 27] for a property with a fair market value of $275,000.00. Considering the first lien against the property with a proximate value of $95,000 at the time of the foreclosure, the sales price was approximately 50% of the fair market value. The sales price was grossly inadequate. Purchasing a home worth approximately $275,000 for $49,000 is "an amount that is so little as to shock a correct mind" as a grossly inadequate price is defined in <u>Fed. Deposit Ins. Corp. v. Blanton,</u> 918 F.2nd 524, 531 (5th Cir. 1990).

95.     The irregularities in the foreclosure sale proximately caused the grossly inadequate sales price. See Pearson v. Flanagan, 52 Tex. 266 (Tex. 1879) which states, "[t]he weight of authority, including that of this court, is, that mere inadequacy of price, of itself, is not sufficient to set aside a sheriff's sale otherwise valid, but that gross inadequacy of price, in connection with slight additional facts showing fraud, irregularity, or other circumstances calculated to prevent the property from bringing something like its reasonable value." The courts have determined that proof of an irregularity coupled with grossly inadequate consideration, gives rise to an inference or presumption that the irregularity contributed to the low price.

---

[30] Wells Fargo Bank, N.A. v. Robinson, 391 S.W.3d 590, 594 (Tex. App. –Dallas 2012, no pet.).
[31] Pearson v. Flanagan, 52 Tex. 266, (Tex. Sup. Ct. 1879)

96.    Plaintiffs contend that the foreclosure sale is void ab initio: (1) there was a defect in the foreclosure sale: the sale was conducted in violation of the restraining order; (2) the defect in the foreclosure sale resulted in a wholly inadequate price; (3) the defect was a contributing cause of the wholly inadequate price.

## I. FOURTH CAUSE OF ACTION
## MONETARY DAMAGES

97.    Plaintiffs reallege the facts set forth in paragraphs 1 – 96 hereinabove and incorporate the facts herein.

98.    The plaintiffs are the true owners of the property the subject of this suit. The Billups would show that the subject property is their home. A person's home is unique, carries sentimental value and its loss is irreparable.[32] They lived in their home from December of 2000 until February, 2020. In losing the possession of their property due to the actions of PPR and Arbelaez, the plaintiffs have suffered monetary damages for the destruction of their property. In PPR in foreclosing on the property and Arbelaez in evicting the plaintiffs from their property, caused the following damages: cost of obtaining a temporary residence, costs of storage of property, loss of improvements to the real property caused by Arbelaez's removal of cabinets, vanities, and other improvements which the plaintiffs had added as fixtures to the real property, and loss of personal property. In the eviction proceedings, the Billups personal property was damaged or destroyed. The approximately value of the loss of the improvements to the real property, the loss of personal property and the costs associated with obtaining a place to live, resulted in losses to the Billups exceeding $50,000.

99.    The Billups have suffered both physical and emotional damages as a result of the loss of the quiet enjoyment of their home.

100.    The losses suffered by the plaintiffs are a foreseeable consequence of the acts of the defendants were caused by and a foreseeable consequence of the acts of PPR.

---

[32] Durham v. MTC Fin., Inc. 2019 U.S. Dist. Lexis 9200 (Arizona Dist. Ct. 2019).

## J. FIFTH CAUSE OF ACTION
## EXEMPLARY DAMAGES

101.    Plaintiffs hereby incorporates by reference and realleges all material allegations of fact set forth in paragraphs 1 - 100 above as if fully set forth herein.

102.    The defendants to the fifth cause of action are PPR and ARBELAEZ.

103.    The defendants PPR and Arbelaez conduct in wrongfully taking, withholding, and converting the plaintiffs' property to its own use was and continues to be a malicious and wanton disregard of the plaintiffs' rights. The defendant PPR knew at all time that the plaintiffs had not been guilty of default under the terms of the security agreement and that PPR was not properly entitled to foreclose on the collateral. Arbelaez had notice of the wrongful actions of PPR, yet it persisted in removing the plaintiffs from their property.

## K. SIXTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

104.    Plaintiffs seek monetary damages  from PPR for intentional infliction of emotional distress.

105.    Defendant PPR, through a series of wrongful acts, intentionally caused the plaintiffs home to be sold at foreclosure when PPR knew that PPR had been lawfully restrained from selling the plaintiffs' property. The foreclosure of the property and the resulting loss of possession of the property, loss of personal property, loss of peace and security were each foreseeable consequences of the acts of PPR.

106.    PPR's conduct in conducting the foreclosure sale in violation of the temporary restraining order was extreme and outrageous in character, and in so extreme in degree, as to go beyond all possible bounds of decency.

107.    As a result of the intentional acts of PPR, plaintiffs' physical, mental and emotional health has suffered. Plaintiffs have suffered the loss of security since the time of foreclosure on June 5,

2018 and the loss of security continues as of the time of the filing of this petition. The loss of security will continue until such time as plaintiffs are reinstated in their home.

108.     Both plaintiffs suffer from health issues. Their health issues are exacerbated by stress from the uncertainty of their future and the loss of their equity in their home. The plaintiffs have lost personal possessions with sentimental and emotional value as well as monetary value.

109.     The acts of PPR have caused both plaintiffs to suffer from extreme anxiety and nervousness caused by the unlawful foreclosure on their property. In addition to the statutory monetary damages, Plaintiffs seek monetary damages for the intentional infliction of emotional distress, the loss of improvements to their real property, the loss of personal property, and the expenses caused by the loss of the possession of their home.

110.     Plaintiffs will show that PPR's conduct as outlined hereinabove was (1) intentional; (2) extreme and outrageous; (3) the conduct caused severe emotional distress. The emotional distress was so severe that it has caused the Plaintiffs physical, mental and emotional harm. It is likely that the plaintiffs will continue to suffer the physical, mental and emotional harm into the future.

## L.
## ATTORNEY'S FEES

111.     Plaintiffs have retained representation to prosecute and defend this action and have agreed to pay attorneys reasonable fees for necessary services. An award of attorneys' fees to the Plaintiffs would be equitable and just and authorized by Ch. 37 and Ch. 38 of the TEX. CIV. PRAC. & REM. CODE, 15 U.S.C. § 1640(a)(3), and 12 U.S.C. § 2605(f)(1)(A).

## M.
## CONDITIONS PRECEDENT

112.     All conditions precedent to Plaintiffs' suit have occurred or have been performed.

**N.**
**PRAYER**

WHEREFORE, Plaintiffs pray that the Defendants be cited to appear and answer and that on final trial Plaintiffs have and recover the title and possession of their home, monetary damages, exemplary damages, damages for intentional infliction of emotional distress and attorney fees.

Respectfully submitted,

**/s/ Alice Bower**
Alice Bower
State Bar No. 15148500
6421 Camp Bowie Blvd, Suite 300
Fort Worth, TX 76116
817-737-5436 – telephone
817-737-2970 – facsimile
alice@alicebower.com
ATTORNEY FOR PLAINTIFFS